IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| MICHAEL KEVIN ADAMS, #02101338 | § | |
| | § | |
| VS. | § | CIVIL CASE NO. 4:21-CV-207-SDJ |
| | § | |
| DIRECTOR, TDCJ-CID | § | |

## ORDER OF DISMISSAL

The above-entitled and numbered civil action was referred to United States Magistrate Judge Kimberly C. Priest Johnson, who issued a Report and Recommendation ("the Report") concluding that the petition for writ of habeas corpus should be denied, and the case should be dismissed with prejudice. Petitioner, with the assistance of counsel, filed objections. (Dkt. #16). Having made a *de novo* review of the objections raised by Petitioner to the Report, the Court concludes that the findings and conclusions of the Magistrate Judge should be adopted.

### I.

Adams makes three objections to the Report, all of which mischaracterize and ignore the facts and circumstances surrounding his conviction. The Court addresses each of his groundless objections in turn.

**A. Objection One**

Adams claims that the Magistrate Judge "misunderstood" his "quibble" with the Jury's decision. (Dkt. #16 at 2). He asserts that the evidence presented at trial was insufficient to support his conviction because it "showed *only* that (1) Adams had a motive, (2) he had a small window of opportunity, (3) a screw found in his truck

1

could have come from a gun grip, and (4) a single instance of his 'touch DNA' was identified on a condom in the victim's bathroom trash can." (Dkt. #16 at 3) (emphasis added).[1]

To the contrary, the evidence presented at trial shows much more. To provide a few examples: the victim and her son moved to Melissa "mostly to escape [Adams];" Adams threatened to kill the victim if she testified against him in the 2013 sexual assault case and "she was 'scared to death' when she believed he had discovered where she lived;" at one point "a blue tarp and handcuffs similar to those used in the March 2013 sexual assault were left on [the victim's] front porch;" Adams used his work computer and username to "locate GPS coordinates at and around [the victim's] home" the week before she was killed; Adams "stopped using his cell phone several days before the date [the victim] was killed and resumed cell phone use at 11:13 a.m. on the date of the killing;" Adams did not have an alibi for the morning of September 9, 2013, when the killing occurred; officers found photos of a gun case containing two .22-caliber firearms with suppressors during a search of Adams' home; and officers found a similar gun case containing one suppressor, but no firearms in a storage unit leased by Adams' ex-wife. *Adams v. State*, No. 05-16-01361-CR, 2018 WL 2355280 at *15, (Tex. App.—Dallas May 24, 2018, pet. denied), *cert. denied*, 139 S.Ct. 1384 (2019).

---

[1] The Court notes that Adams' fourth statement of the evidence—that it "showed. . . a single instance of his 'touch DNA' was identified on a condom in the victim's bathroom trash can"— appears to be an implicit concession that undermines his second objection. The Court will elaborate further. *See infra* section I.B.

2

These facts are notably absent from Adams' statement of the evidence presented at trial. Reviewing the evidence in the light most favorable to the verdict, a rational factfinder could have found that Adams was guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324–25, 99 S.Ct. 2781, 61 L.Ed. 2d 560 (1979); *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). The Magistrate Judge did not misunderstand anything.

**B. Objection Two**

Adams claims that his trial counsel was ineffective because counsel did not object to the admission of the touch DNA evidence under Texas Rule of Evidence 403. This objection appears to be premised on a deliberate mischaracterization of the evidence. Adams takes issue with the Magistrate Judge's statement that the touch DNA evidence "connected Petitioner to the victim's house." (Dkt. #14 at 40); (Dkt. #16 at 6). He claims that this statement is inconsistent with trial testimony that the touch DNA does not "mean that a person was there," and argues that its probative value "was near zero." (Dkt. #16 at 6–7).

This untenable objection turns on Adams' misreading of a single sentence in the Report. The Report is quite clear—the touch DNA evidence "connected [Admas] to the victim's house." (Dkt. #14 at 40). Notably, the Magistrate Judge did not state that the touch DNA evidence definitively connected Adams to the house, conclusively proved that he was there, or indicated that he was the last person to visit the victim's house before she was killed. To the contrary, the Report only states—accurately— that the presence of Adams' touch DNA evidence *connects* him to the victim's house.

3

This evidence was presented by the prosecution at trial and Adams had every opportunity to undermine its reliability and probative value.

In making this objection, Adams also appears to underestimate how strong the *Strickland* and 28 U.S.C. § 2254 standards are. *Strickland* presents two prongs: (1) that counsel's performance was deficient and (2) that counsel's deficient performance resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Adams must show that an objection to the admission of the touch DNA evidence would have been sustained, had it been made. *United States v. Oakley*, 827 F.2d 1023, 1025 (5th Cir. 1987). Even when an objection has a sound basis, counsel can still be considered effective if the decision not to make the objection was a matter of trial strategy. *Burnett v. Collins*, 982 F.2d 922 (5th Cir. 1993) ("[F]ailure to object to leading questions and the like is generally a matter of trial strategy as to which we will not second guess counsel.").

Additionally, a federal habeas court must review a state petitioner's ineffective assistance of counsel claim "through the deferential lens of [28 U.S.C.] § 2254(d)." *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). Reviewing Adams' ineffective assistance of counsel claim through the lens of AEDPA means that he has a higher bar to exceed in order to prevail. "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citations omitted).

Moreover, unreasonableness under *Strickland* and under § 2254(d) are not the same. First, "[t]he *Strickland* standard is a general one, so the range of reasonable applications is substantial." *Id.* Second, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* The Court must consider not only whether the state court's determination was incorrect, but also "whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citing *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Thus, considering the deference accorded by § 2254(d), "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101.

Ample evidence supports counsel's strategic decision not to object to the touch DNA evidence. During trial, three experts testified regarding the touch DNA evidence found on the green condom. (Dkt. #10-88 at 369–72). State expert Kimberlee Mack testified that the green condom presented "a mixture of three DNA profiles" one of which potentially belonged to Adams. (Dkt. #10-88 at 369). She further stated that "the presence of a person's DNA in a location 'doesn't mean that person was there' or 'tell us how it got there.'" (Dkt. #10-88 at 369). State expert Amber Moss testified that she also conducted DNA analysis on the condom. (Dkt. #10-88 at 370). She stated that the green condom presented DNA of three, possibly four, people—two of which appear to be Adams and the victim. (Dkt. #10-88 at 370). Defense expert Dr. Greg Hampikian testified that it is "possible for DNA from someone to appear in a location where that

5

person has never ever been." (Dkt. #10-88 at 371). In closing arguments, Adams' counsel argued that the green condom was "unreliable evidence" that "should not be considered." (Dkt. #10-88 at 372). In sum, the expert testimony alone shows that counsel's decision not to object was reasonable and a matter of trial strategy. Even if trial counsel should have objected, the error was harmless. The jury had ample information and testimony to consider the reliability of the touch DNA evidence. There is no basis for finding that the jury was confused. Adams' ineffective assistance of counsel claim fails under *Strickland* and § 2254(d).

Finally, Adams appears to have undermined his own objection. In his first objection, Adams states that the evidence "showed . . . a single instance of his 'touch DNA' was identified on a condom in the victim's bathroom trash can." (Dkt. #16 at 3). Yet, in the same breath, he takes issue with the Magistrate Judge's statement that the touch DNA evidence "connected Petitioner to the victim's house." (Dkt. #14 at 40). Adams' second objection is not credible given the implicit concession in his first objection. If the touch DNA evidence can be identified "on a condom in the victim's bathroom trash can," as Adams says, it follows that the evidence "connected" him to the house. In short, Adams' objections are irreconcilable. While the Court, again, reiterates that the touch DNA evidence found in the victim's house does not definitively establish that he was there at the time of the murder, it is, at minimum, a connection to the victim's house.

6

### C. Objection Three

The Court need not address Adams' third objection at length. He claims that the Fifth Circuit's application of *Stone v. Powell*, 428 U.S. 465 (1976), is improper following the enactment of AEDPA because the two are "impossible to reconcile." (Dkt. #16 at 8). However, because the Fifth Circuit has continued to apply *Stone*, as Adams points out, so too shall this Court.

### II.

Therefore, the findings and conclusions of the Magistrate Judge are hereby **ADOPTED** as the findings and conclusions of the Court.

It is accordingly **ORDERED** that the petition for a writ of habeas corpus is **DENIED,** and the case is **DISMISSED** with prejudice. A certificate of appealability is **DENIED**.

It is further **ORDERED** that all motions not previously ruled on are hereby **DENIED**.

**So ORDERED and SIGNED this 26th day of February, 2025.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE